# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SHARON ROGERS,                          :

     Plaintiff,                    :

                              Case No. 3:10cv00383

 vs.                                   :

                              District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,                      :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                :

     Defendant.                    :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    <u>Introduction</u>

      Plaintiff Sharon Rogers brings this case challenging the Social Security

Administration's denial of her application for Supplemental Security Income ("SSI") filed

on January 11, 2007. She claims disability from a heart attack, right leg arthritis, and

fibromyalgia. *Page ID*## 144-46, 167. After her application was denied during the initial

administrative proceedings, Plaintiff was provided a hearing before an Administrative

Law Judge ("ALJ"). On March 19, 2010, the ALJ issued a decision concluding that

Plaintiff was not under a "disability" within the meaning of the Social Security Act, and

was therefore not eligible for SSI. *Page ID*## 64-76. The ALJ's decision and the

resulting denial of benefits became the final decision of the Social Security

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Administration. *Page ID#* 54. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. # 11), the administrative record (Doc. # 6), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits because the ALJ's decision was not based on substantial evidence, and therefore the Commissioner has failed to meet his burden of proof. The Commissioner seeks an Order affirming the ALJ's decision.

## II.   <u>Background</u>

Plaintiff was 55 years old at the time of the administrative decision. Thus, she is considered to be a "person of advanced age" for purposes of resolving her SSI claim. *See* 20 C.F.R. § 416.963(e); *see also Page ID#* 162. Plaintiff has a high school education, *see* 20 C.F.R. § 416.964(b)(4); *see also Page ID#* 172, and has past relevant work as a counter clerk, waitress, dishwasher, and cook. *Page ID##* 168, 174-80.

Plaintiff testified at the administrative hearing[2] that she does not have a driver's license. *Page ID#* 90. She lost her license after she was driving, her vision blurred due to her diabetes, and she hit a car. *Page ID#* 91. She has not obtained a new license because she does not feel it would be safe for her to drive. *Id.* Plaintiff suffered a heart attack

---

[2]Because the alleged errors raised by Plaintiff do not implicate the vocational expert testimony also presented at the administrative hearing, the Court has not summarized that testimony.

three years prior to the hearing and underwent surgery. *Page ID#* 92. Plaintiff testified that her physical impairments included carpal tunnel syndrome; trigger finger; contracture of her fingers; tendonitis in her elbow, hands, and wrists; diabetes; retinopathy; back pain from two "messed up" vertebrae; fibromyalgia; arthritis in her knee; and high blood pressure. *Page ID#* 92-96.

Plaintiff testified that her Achilles tendons hurt when she stands or walks for "any period of time," and her back hurts all the time, even if she is sitting down. *Page ID#* 96. She could walk long distances (and even walked to get her groceries), but she had difficulty carrying much weight and could only lift 15 to 20 pounds. *Page ID##* 96-97.

As to her mental impairments, Plaintiff testified that she suffered from post-traumatic stress disorder stemming from child abuse and bipolar disorder. *Page ID#* 98. Plaintiff testified that she tried to commit suicide when she was 14; ran away from home; "got pregnant, [and] had to get married." *Id.* Plaintiff claims she "did a lot of the typical things that bipolar people do." *Id.* She reported working over 40 jobs in her life, and living in over 40 different places. *Id.* Plaintiff stated she has "never been able to keep it together to do anything," has racing thoughts, and a poor memory. *Id.* She reported that when she was in college she "ended up having 14 incompletes that [she] never completed." *Id.* Plaintiff further testified that when she was manic or hypomanic, she could do the coursework in college, *id.*, but if she got "seriously depressed" or "too manic," she could not focus, *id.*, and "get [her] thoughts together to pass tests." *Id.*

As to her daily activities, Plaintiff reported that she is able to wash dishes, change

her cat's litter box, "straighten up and dust," cook once or twice a week, do laundry, and walk for two to three blocks. *Page ID##* 100-04.

Turning to other evidence, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence. *See* Doc. #8 at 2-11; Doc. #12 at 2-8[3]. In light of this, and upon consideration of the complete administrative record, there is no need to fully reiterate or expand on the parties' descriptions. Still, describing a few pertinent medical source opinions will help to frame further review.

Plaintiff relies on the opinions of her treating psychiatrist, Pravesh B. Patel, M.D. and her treating therapist, Sharon Walk, MA, LPCC-SC ("Therapist Walk") at Advanced Therapeutics Services, Inc.

On April 3, 2008, Plaintiff reported feeling manic and wished to see a psychiatrist because she could no longer control her symptoms. *Page ID#* 644. Plaintiff was grieving over the death of her son and sought weekly counseling. *Id.* It was also noted that Plaintiff had regressed, her affect was labile, and her mood was hypomanic. *Page ID#* 644. She was again described as hypomanic on April 14 and April 28, 2008, *Page ID##* 642-43, and on July 14, 2008. *Page ID#* 633.

On April 28, 2008, Plaintiff was evaluated by Dr. Patel for medication management. *Page ID##* 639-41. Dr. Patel noted that Plaintiff had been seeing a therapist

---

[3]Although the record contains a history of treatment for numerous issues, Plaintiff's arguments on appeal primarily relate only to her psychological condition. Accordingly, the Court has similarly restricted the summary of the medical source opinions.

at Advanced Therapeutics since September 2007, was described as anxious and her affect was constricted. Dr. Patel diagnosed Plaintiff with bipolar disorder, recurrent and moderate without psychotic features and anxiety disorder, NOS. *Page ID# 641.* Dr. Patel assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 52.[4] *Id.*

During the spring and summer of 2008, it was noted that Plaintiff's symptoms improved on medication but her affect was constricted or anxious during sessions. *Page ID## 627, 631, 634, 637.*

During her sessions in August 2008, Plaintiff's therapist noted she was "happy," and she was found to be "improved." *Page ID## 626, 628, 630.* On August 28, Plaintiff stated that she was exercising and leaving her house more often to cope with her hypomanic episodes. *Page ID# 626.* In September 2008, according to Dr. Patel, Plaintiff's symptoms were improving and her mental status examination was completely normal. *Page ID# 625.* However, her mental state on September 25, 2008 and October 16, 2008, was moving toward hypomania. *Page ID## 623-24.* On November 20, 2008, she was described as angry and manic. *Page ID# 622.* Plaintiff's mood was noted to be depressed on December 10, 2008. *Page ID# 621.*

---

[4]Health care clinicians perform a Global Assessment of Functioning to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Hash v. Commissioner of Social Sec.*, 309 Fed.Appx. 981, 988 n.1 (6th Cir. 2009); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34. Individuals with scores of 51-60 are classified as having "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34.

Therapy progress notes dated from January 2009 to September 2009 show that Plaintiff was angry, depressed, and manic. *Page ID##* 899-911.

Interrogatories were completed by Dr. Patel and Therapist Walk on March 18, 2009. *Page ID##* 650-59. Plaintiff had been in counseling since September 2007 and had last been seen on February 3, 2009. *Page ID#* 650. Plaintiff was being seen for bipolar disorder and she cycled rapidly. Dr. Patel and Therapist Walk opined that the combination of Plaintiff's physical and mental impairments were greater than the sum of the impairments individually. *Page ID#* 651. Plaintiff cried when confronted with stress. *Page ID#* 654. She was unable to be prompt and regular in attendance; respond appropriately to supervision, co-workers and customary work pressures; withstand the pressure of meeting normal standards of work productivity and work accuracy without significant risk of physical or psychological decompensation; sustain attention and concentration on her work to meet normal standards of work productivity and work accuracy; understand, remember, and carry out simple work instructions without requiring very close supervision; behave in an emotionally stable manner; relate predictably in social situations; demonstrate reliability; and maintain concentration and attention because of her bipolar symptoms. *Page ID##* 653-57. Plaintiff didn't deal with change and wanted everything to stay the same. *Page ID#* 657. Dr. Patel and Therapist Walk concluded that Plaintiff had a marked restriction in her concentration, persistence, or pace. *Page ID#* 659.

Dr. Patel and Therapist Walk also completed a Medical Assessment of Ability to do work related activities. *Page ID##* 660-62. According to Dr. Patel and Therapist Walk, Plaintiff had poor to no ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. *Id.*

The Commissioner relies on the opinions of consulting psychologist, Mary Ann Jones, Ph.D., who evaluated Plaintiff on behalf of the Ohio Bureau of Disability Determination ("BDD") on March 15, 2007. *Page ID##* 309-14. Plaintiff reported being sexually abused by family members and emotionally abused by her step-father. She attempted suicide when she was fourteen and was seen by a psychologist but her mother took her out of treatment. Both of her parents were diagnosed with bipolar disorder. Plaintiff attended three different universities. She was married three times and had six children. Two of her children are deceased. Plaintiff related that she was able to do housework and yard work for ten years.

Plaintiff was last employed working at a fast food restaurant. *Page ID#* 309. She had past drug use of crack cocaine for 12 years, reporting she has been clean for six years. Plaintiff described both her physical and mental health as poor. On examination, Plaintiff's grooming was good and there was no signs of intoxication. Her facial expressions were described as "highly animated." *Page ID#* 310. Plaintiff was cooperative and her speech was clear, relevant, and coherent; and a mild tendency for

pressure was noted. Stream of thought proved disjointed to increased and thought association was primarily circumstantial. Her demeanor was "defended and resigned" and her affect was sad. *Id.* She had limited eye contact. Plaintiff was preoccupied with her symptomatology and Dr. Jones noted possible delusional thinking and paranoid ideation. She was "distracted with regard to her degree of consciousness." *Page ID#* 311. Her intelligence was thought to be average. Dr. Jones found Plaintiff had sufficient insight, judgment, and common sense to live independently, make important decisions about the future, and manage her own funds. *Page ID#* 312. Plaintiff reported that each day she did laundry, meditated, prayed, cooked, read, fed her cats, walked to the thrift shop, walked three miles, and exercised. *Id.* She lived with her boyfriend and visited others. She did some cleaning and grocery shopping. Dr. Jones opined, "[Plaintiff's] overall independence of functioning is judged as semi-dependent to reasonably autonomous." *Id.* Dr. Jones diagnosed Plaintiff with bipolar disorder, psychiatric factors affecting physical condition, and generalized anxiety disorder. *Page ID#* 313. Plaintiff was assigned a GAF score of 58, but her functional GAF score was rated as mild (between 61-70). Dr. Jones concluded that Plaintiff had moderate limitations in her ability to relate to others, to understand, remember, and follow instructions, and to withstand work stress and pressure. *Page ID##* 313-14. Dr. Jones stated that Plaintiff's ability to maintain concentration, persistence, and pace to perform simple, repetitive tasks was mildly impaired. *Page ID#* 314.

On April 20, 2007, Catherine Flynn, Psy.D., reviewed the record on behalf of the Ohio BDD. *Page ID##* 316-33.  Dr. Flynn opined that Plaintiff had a moderate restriction in her social functioning and a mild impairment in her ability to maintain concentration, persistence, or pace. She had one or two episodes of decompensation of extended duration. *Page ID#* 326.  Plaintiff was moderately restricted in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity with others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  *Page ID##* 330-31.  Dr. Flynn concluded that Plaintiff was capable of understanding, remembering, and carrying out simple, quick work tasks, although she would have difficulty performing more detailed tasks and maintaining concentration for an extended period of time.  *Page ID#* 332. Dr. Flynn also reported that Plaintiff could interact with others, at least superficially, but might have difficulty with a job that required frequent changes in pace. *Id.* On August 13, 2007, Todd Finnerty, Psy.D., reviewed Plaintiff's medical record and affirmed Dr. Flynn's assessment. *Page ID##* 342-43.

## III.   THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

### A.   <u>Applicable Standards</u>

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the

"disability" requirement. To receive SSI, an applicant must be a "disabled individual."
42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase
"disabled individual" – as defined by the Social Security Act – has specialized meaning
of limited scope. It encompasses only those who suffer from a medically determinable
physical or mental impairment severe enough to prevent them from engaging in
substantial gainful activity. 42 U.S.C. § 1382C(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.
An SSI applicant bears the ultimate burden of establishing that he or she is under a
disability. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir.
1992).

**B.     Social Security Regulations**

Social Security Regulations require ALJs to resolve a disability claim through a
five-Step sequential evaluation of the evidence. *See Page ID## 64-66; see also* 20 C.F.R.
§416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review,
*see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the
sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet
       or equal the criteria of an impairment set forth in the Commissioner's
       Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the
       claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### C. **ALJ Lombardo's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date of January 11, 2007. *Page ID#* 66.

The ALJ found at Step 2 that Plaintiff has the severe impairments of osteoarthritis of the lumbar spine; diabetes mellitus; obesity; residuals of myocardial infarction and angioplasty; and bilateral carpal tunnel syndrome. *Id.* The ALJ determined that Plaintiff's medically determinable mental impairments of bipolar disorder, psychological factors affecting physical condition, and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore non-severe. *Page ID#* 70. The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. *Page ID#* 71.

At Step 4 the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but was limited to occasional stooping and crouching, and

frequent fine and gross manipulation. *Page ID#* 72. The ALJ further determined that allegations of disability are not supported by substantial objective medical evidence or clinical findings. *Page ID#* 75.

The ALJ next found that Plaintiff is capable of performing past relevant work as a counter clerk. This work does not require the performance of work-related activities precluded by her RFC. *Page ID##* 75-76. This assessment, along with the ALJ's findings throughout her sequential evaluation, led her to ultimately conclude that Plaintiff was not under a disability, and therefore not eligible for SSI. *Page ID#* 76.

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Security*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Social Security*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence

consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "(E)ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.  DISCUSSION

### A.  Parties' contentions

Plaintiff argues that the ALJ erred by not giving controlling or deferential weight to the opinions of Dr. Patel and Therapist Walk regarding her mental limitations. (Doc. # 8 at 12). Plaintiff contends the ALJ erred in finding that she did not suffer from severe mental impairments that would limit her ability to perform work activity. This is seen, according to Plaintiff, in the ALJ's apparent overreliance on what was deemed to be "objective" evidence, as well as misunderstanding that Dr. Patel's records actually provided such evidence. Plaintiff further contends that the psychological consultant found greater limitations than the ALJ. (*Id.* at 19).

13

The Commissioner contends that the ALJ properly rejected Dr. Patel's opinions by finding his opinions unsupported and inconsistent with his treatment records. The Commissioner points to numerous pages of the administrative record to demonstrate that Dr. Patel consistently reported normal findings. (Doc. #10 at 12). The Commissioner further contends that the ALJ properly relied on the in-depth report of Dr. Jones.

As discussed below, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for further proceedings.

**B.** **Medical Source Opinions**

      *1.*    *Treating Medical Sources*

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a non-examining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); see *Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Id.*

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the

treating physician." *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544). More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the (Social Security) Act." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 at *2. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. § 416.972(d), (f); *see also* Ruling 96-6p at *2-*3.

2. *Non-Treating Medical Sources*

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the (Social Security) Act." SSR 96-6p. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See Id.* at *2-*3. The Regulations explain, "[i]n deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 416.927(b). To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions

under the factors set forth in § 416.927(d) including, at a minium, the factors of

supportability, consistency, and specialization. *See* 20 C.F.R. § 416.972(f); *see also* SSR

96-6p at *2-*3.

C.    **Discussion**

The step-two burden of establishing a "severe" impairment has been characterized

in this circuit as "*de minimis.*" *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988);

*Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). The

Commissioner states that an impairment is "not severe if it does not significantly limit [a

claimant's] physical or mental ability to do basic work activities, [such as] walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . .

[u]nderstanding, carrying out, and remembering simple instructions, [and] [u]se of

judgment." 20 C.F.R. § 416.921. Thus, in *Salmi v. Sec'y of Health and Human Servs.,* 774

F.2d 685 (6th Cir. 1985), the Court of Appeals held that an impairment qualifies as "non-

severe"only if it "would not affect the claimant's ability to work," regardless of the

claimant's age, education, or prior work experience. *Id.* at 691-92. The prevailing view,

then, is that only slight abnormalities that minimally affect a claimant's ability to work

can be considered non-severe. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988); *Farris

v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985).

Under those circumstances, the Court of Appeals has found that substantial

evidence must support a finding of no severe impairment. *See Higgs,* 880 F.2d at 863.

The *Higgs* court acknowledged that the application of the requirement to establish

"severity" is quite "lenient," but nonetheless observed that "Congress has approved the threshold dismissal of claims obviously lacking medical merit," and that "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 862-63.

In the present case, the ALJ not only declined to apply controlling weight to Dr. Patel's opinions, but also declined to apply any significant weight to this psychiatrist's opinions. *See Page ID##* 69-70. Although this appears to indicate that the ALJ followed the two-step weighing procedure, such is not the case. The ALJ concluded that Dr. Patel's contemporaneous treatment notes constitute substantial evidence showing that Plaintiff could, in fact, work, *id.,* by reasoning that "[t]he objective medical evidence of record does not support claimant's treating psychiatrist's opinion." *Id.* Her reasons for rejecting Dr. Patel's opinions, however, are not supported by substantial evidence for the reasons outlined below.

First, the ALJ overlooked that Dr. Patel's records identified many symptoms indicative of severe mental illness including hypomania, labile or constricted affect, anxiety, sleep difficulty, depression, and anger. *See Page ID##* 621-37, 899-911. When mental work abilities are at issue, such symptoms constitute supporting medical or objective evidence. The United States Court of Appeals for the Sixth Circuit has explained:

> In general, mental disorders cannot be ascertained and verified as are most
> physical illnesses, for the mind cannot be probed by mechanical devices ...
> in order to obtain objective clinical manifestations of mental illness....

17

[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)(other citation omitted)). In Plaintiff's case, the ALJ erred by rejecting Dr. Patel's opinions in this manner.

Additionally, in determining that Plaintiff did not suffer from a severe mental impairment, the ALJ relied on the assessment of Dr. Jones, the one-time examiner for the Ohio BDD and the file review performed by Dr. Flynn. *Page ID##* 69-70. A review of Dr. Jones' March 2007 report, however, actually lends support to Dr. Patel's opinion. Dr. Patel, who has been treating Plaintiff since September 2007, summarized Plaintiff's medical problems as consisting primarily of bipolar disorder, which cycles rapidly, sometimes daily.[5] *Page ID#* 651. He further added that Plaintiff's depression is caused by her bipolar disorder, and that it is "[h]er depressive side of the disorder [that] keeps getting her fired [from employment]," because of the "psychological stress." *Page ID##* 652-53. Dr. Patel also provided that "when [Plaintiff is] depressed she can't maintain attendance [at work]," and "cycles around to[o] fast to complete a work week."

---

[5] The interrogatories signed and submitted by Dr. Patel were handwritten and also signed by Therapist Walk.

During the consultive examination, Dr. Jones noted the following: Plaintiff's facial expressions were highly animated; her speech had a mild tendency for pressure and stream of thought was disjointed to increased; thought associations were circumstantial; Plaintiff had a defeated and resigned demeanor; and sad affect. *Page ID#* 310. Dr. Jones further added that Plaintiff described her emotional state as depressed and emotionally labile, and that Plaintiff reported to be overwhelmed by life's circumstances and her medications. Dr. Jones noted possible delusional thinking and paranoid ideation. Plaintiff was described as "distracted with regard to her degree of consciousness." *Page ID#* 311.

Dr. Jones reported that Plaintiff's "overall independence of functioning is judged as semi-dependent to reasonably autonomous." *Id.* Dr. Jones diagnosed bipolar disorder, NOS, psychological factors affecting physical condition, and generalized anxiety disorder. Dr. Jones opined that "[i]t is unlikely [Plaintiff] would be able to relate sufficiently to coworkers and supervisors on any sustained basis (for two or more hours at a time) in order to perform, simple, repetitive tasks not requiring complicated or detailed verbal instructions." *Page ID#* 313. Dr. Jones assessed Plaintiff's "mental ability to relate to others, including fellow workers and supervisors, [as] moderately impaired by her bipolar symptoms and her anxiety symptoms as well as her preoccupation with her medical limitations." *Id.*

Dr. Jones noted that Plaintiff's "mental ability to understand, remember, and follow instructions is moderately impaired," due "more so by her overall psychological condition than by any cognitive limitations." *Page ID##* 314. Dr. Jones opined that

Plaintiff's "mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks is mildly impaired," and that her "mental ability to withstand the stress and pressures associated with day to day work activity is judged as moderately impaired." *Id.* Dr. Jones also added that Plaintiff "shows moderate mental limitations in the areas of relating and comprehension because of her bipolar symptoms, her anxiety, and her preoccupation with her medical limitations." *Id.*

The state agency reviewer, Dr. Flynn, also concluded that Plaintiff had a moderate restriction in her social functioning and a mild impairment in her ability to maintain concentration, persistence, or pace. *Page ID#* 326. Dr. Flynn noted that Plaintiff had one or two episodes of decompensation of extended duration. *Page ID#* 326.

In addition, the ALJ did not address Dr. Patel and Therapist Walk's opinion that Plaintiff's symptoms of depression caused by her bipolar disorder impeded her ability to cope with her physical pain. *Page ID#* 652. Dr. Patel and Therapist Walk explained that "[a]nyone who has physical problems sooner or later end[s] up [with] depression . . . . Plaintiff's problem is bipolar disorder." *Id.* The ALJ overlooked or ignored this consideration when rejecting this treating psychiatrist's opinions. *See id.*; *see Page ID##* 69-70. By failing to consider this feature of Dr. Patel's report, the ALJ failed to recognize the mandatory language of the "supportability" factor, which promises, "[t]he better explanation a source provides for an opinion, the more weight we will give that opinion...." 20 C.F.R. § 416.927(d)(3). This was an acute omission on the ALJ's part because Dr. Patel's opinion was the only medical source opinion in the record addressing

the combined impact Plaintiff's physical pain and mental illness had on Plaintiff's work abilities. *See* 42 U.S.C. § 423(d)(2)(B); *see also* 20 C.F.R. § 416.923.

Turning next to the six-factor analysis that the ALJ should have applied to Dr. Patel's opinions, it is clear that Dr. Patel meets the first two criteria: at the time of the hearing, he had treated Plaintiff for almost a year when offering his opinion. *Page ID##* 639-41, 650-59. Dr. Patel is a psychiatrist, and thus a specialist in the psychological impairments at issue in this case. Fourth and fifth of these factors is the nature and extent of the relationship between the doctor and Plaintiff. In this case, Dr. Patel's relationship with Plaintiff is that of a treating psychiatrist who engaged in bi-monthly sessions with Plaintiff. Such a relationship certainly meets the criteria set forth in the Regulations, as well as *Blakley* and *Wilson*. The final criterium, consistency with other records in evidence, is also met. While the records do show that the severity of Plaintiff's mental impairments did wax and wane over the course of time, a review of the longitudinal record shows that Plaintiff made, at best, only marginal progress since obtaining treatment from Advanced Therapeutic Services. This is despite Plaintiff's compliance with medication and treatment recommendations. Furthermore, Dr. Patel's observations and conclusions are consistent with those of Dr. Jones, who examined Plaintiff at the request of the Administration, and with the progress notes from Therapist Walk. *See Page ID##* 309-14, 621-44, 891-911. In short, it was error for the ALJ to fail to accord significant weight to Dr. Patel's opinions.

In this case, the ALJ never mentioned the specific limitations identified by Dr. Patel in his medical assessment, let alone provide an explanation as to why she was rejecting these opinions. The ALJ's failure to provide good reasons for rejecting Dr. Patel's opinions was not harmless error. "We have stated that "(w)e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 545).

Despite the fact that Plaintiff has treated with Therapist Walk since September 2007, *Page ID#* 650, and most often saw her every two weeks, *Page ID##* 621-44, 899-911, the ALJ completely rejected Therapist Walk's opinion because she believed her opinion was inconsistent with Plaintiff's mental health treatment records, which showed some positive response to medication and treatment. In fact, however, Therapist Walk's opinion is actually consistent with the opinions of Dr. Patel, as well as Dr. Jones, and is further supported by her progress notes, and those of Dr. Patel. Therapist Walk's treatment history with Plaintiff meets the criteria set forth in SSR 06-3p, and it was also therefore improper for the ALJ to accord no weight to Therapist Walk's opinion.

## VI.    REMAND IS WARRANTED[6]

---

[6]Because of this conclusion and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining challenge to the ALJ's decision is unwarranted.

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to the problems discussed above. On remand the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings, and by case law; and evaluate Plaintiff's disability claim under the required five-Step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for SSI should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The ALJ's decision be vacated;

2.      No finding be made regarding whether Plaintiff is under a "disability" within the meaning of the Social Security Act;

3.      This matter be **REMANDED** to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.      The case be terminated on the docket of this Court.


January 9, 2012                          _____s/ Sharon L. Ovington_____
                                                      Sharon L. Ovington
                                             United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17)  days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).